GUY FITTIPALDI et al., Individually and on Behalf of All Other Persons Similarly Situated, et al., Appellants, v. EDWARD J. LEGASSIE, Individually and as President of Local No. 12 United Brotherhood of Carpenters and Joiners of America, AFL–CIO, et al., Respondents.

Fourth Department, April 12, 1963.

*Costello, Cooney & Fearon* (*Vincent A. O'Neil* of counsel), for appellants.

*Breed, Abbott & Morgan* (*Lawrence M. Rulison* of counsel), for respondents.

GOLDMAN, J. Appellants are union members whom this court reinstated to full membership rights after they had been wrongfully suspended or expelled through unfair trials and sham procedures. The facts of the union's disciplinary action are found in our prior opinion, *Fittipaldi* v. *Legassie* (7 A D 2d 521). We held that since the issue of damages, including lost earnings, had not been reached by the court on the first trial, a new trial should be had.

This appeal is now taken by three of the four original plaintiffs * who contend that upon the second trial, the court erred in finding that plaintiffs failed to prove any basis for compensatory damages, in refusing to consider an award of exemplary damages against the defendants as individuals and as officers of the unions, Local No. 12, the district council and the International Brotherhood, and in awarding only such counsel fees as the plaintiffs had agreed with their attorneys would constitute the charge to them individually.

The trial court denied any compensatory damages, finding that the plaintiffs failed to show any loss of earnings. Although the record is not precise, because plaintiffs were either engaged in other income-producing interests, during the period of their suspension, or out of work due to illness, or could not produce all income tax records, there was credible testimony as to this aspect of the case indicating that plaintiffs had been damaged and the court should have considered it. The difficulty of computation should not, in these cases, bar recovery, especially

---

* One of the plaintiffs at both trials did not perfect his appeal from the judgment rendered after the second trial and is therefore not involved in this appeal.

when the plaintiffs are obligated to minimize their damages by seeking work. (See *Madden* v. *Atkins*, 4 N Y 2d 283, 297.) As Professor Summers has said in "The Law of Union Discipline: What the Courts Do in Fact" (70 Yale L. J. 175, 216): "The amount of damages is usually based on the loss of earnings due to the discipline, including loss of fringe items such as health and welfare benefits and pension rights. Calculating these may be complicated, but creates no serious stumbling block." (See, also, *Madden* v. *Atkins*, 24 Misc 2d 4, 7, 8, mod. 10 A D 2d 989.) Damages for loss of compensation in situations like those at bar by their very nature may not be susceptible of proof to a mathematical certitude. Difficulty in proving damages does not excuse their determination (1 Clark, New York Law of Damages, § 80, p. 139). A reasonable basis for the computation of approximate result is all that should be required here (*Eastman Co.* v. *Southern Photo Co.*, 273 U. S. 359, 379; *Duane Jones Co.* v. *Burke*, 306 N. Y. 172, 192; *Mills Studio* v. *Chenango Realty*, 15 A D 2d 138; 15 Am. Jur., Damages, § 21, p. 412; Restatement, Contracts, § 331). Upon the retrial plaintiffs should present their evidence in this respect with more definiteness and certainty than is contained in the record before us.

The more difficult question is whether exemplary or punitive damages may be awarded in these actions for wrongful expulsion. Relying upon *Dunkel* v. *McDonald* (272 App. Div. 267) the trial court held that it had no power as a matter of law to award that relief because the action was one "in equity" and not in law. The amended complaints all seek broad and diverse relief, among other things praying "for any lost earnings or other damages the court may find plaintiff has sustained as a result of the wrongful conduct of the defendants". This invokes the broadest, not the strictest powers of the court. All relief should be granted that is appropriate (see *Farr* v. *Newman*, 18 A D 2d 54 [4th Dept.] and cases cited therein). Moreover, the court which decided the *Dunkel* case has recognized that we are no longer bound by the technical and archaic distinctions between law and equity and has disavowed the principle there asserted. As Justice Breitel said in *I. H. P. Corp.* v. *210 Cent. Park South Corp.* (16 A D 2d 461, 465): "the rule which forbids combination of equitable relief with an award of punitive damages is founded upon an obsolete procedural division with no rational basis, apart from history, in modern substantive law or equity". In affirming this decision (12 N Y 2d 334) the Court of Appeals has removed any doubt as to the power of a court of equity to award punitive damages.

The focus of our inquiry then, is not whether the court, sitting in equity, has the power to award exemplary or punitive damages, but whether it may do so under this complaint for damages arising from wrongful expulsion. In other words, proper determination of this question involves application of the purpose of such damages to the nature and facts of the action at bar. Various formulae have been used by our courts in suggesting appropriate reasons for imposing as a punitive sanction damages beyond those normally compensatory. The classic statement contained in *Voltz* v. *Blackmar* (64 N. Y. 440) is as pertinent today as when it was written in 1876. There the court said (p. 444): "In vindictive actions, as they are sometimes termed, such as libel, assault and battery and false imprisonment, the conduct and motive of the defendant is open to inquiry, with a view to the assessment of damages; and if the defendant, in committing the wrong complained of, acted recklessly or willfully and maliciously, with a design to oppress and injure the plaintiff, the jury, in fixing the damages, may disregard the rule of compensation, and beyond that may, as a punishment to the defendant, and as a protection to society against a violation of personal rights and social order, award such additional damages as in their discretion they may deem proper. The same rule has been held to apply in the case of a willful injury to property, and in actions of tort founded upon negligence, amounting to misconduct and recklessness." Recently the Court of Appeals considered the applicability of punitive damages to an action grounded upon fraud and deceit (*Walker* v. *Sheldon*, 10 N Y 2d 401). As the dissenting opinion noted, no case had as yet done that. The majority distinguished between the " ordinary " fraud and deceit case and one where the fraud was aimed at the public generally and was gross, involving "high moral culpability". Judge FULD wrote (p. 404): " Moreover, the possibility of an award of such damages may not infrequently induce the victim, otherwise unwilling to proceed because of the attendant trouble and expense, to take action against the wrongdoer."

Strong reasons of policy promote the use of exemplary damages to deter union officials from conduct designed to suppress the rights of members to a fair and democratic hearing on legitimate disciplinary charges. The very basis for the existence of unionism in our society today is the promise of employment to those who desire to associate freely in order to obtain it. The right of the workingman to the benefits of collective bargaining is too essential and valuable to be hindered, impeded and seriously damaged by irresponsible and dictatorial leaders

whose dominance in any given situation does great disservice to the purpose and principles of unionism. When that right of free association is usurped by a concerted, malicious effort to deprive the individual of the safeguards built into the association, it cannot be condoned. To do so without providing a sufficiently full remedy to the individual maligned would be to permit unfettered domination by the strong "boss", equally obnoxious be he employer or union official. Too often members are reluctant to enforce the obligations owed to them under their constitutions because of their lack of funds, possibility of recrimination, lack of education and the like. (See, generally, Summers, "The Law of Union Discipline: What the Courts Do in Fact", *supra*, pp. 214–224.) Imposition of exemplary damages, when the requisite elements of malice, gross fraud, wanton or wicked conduct, violence or oppression are present, serves to achieve the deterrence they were designed to effect. The circumstances from which this may arise could be as many as the formulae used to express them. All, of course, would need to contain evidence of violence or oppression or malice, gross fraud or wanton and wicked conduct. (See 1 Clark, New York Law of Damages, § 51, pp. 93–96; *Trimble* v. *New York Life Ins. Co.*, 234 App. Div. 427; *Douglas* v. *Tompkins Realty Corp.*, 28 Misc 2d 192, 194; *Walker* v. *Sheldon*, 10 N Y 2d 401, *supra*; *Voltz* v. *Blackmar*, 64 N. Y. 440, *supra*; *Toomey* v. *Farley*, 2 N Y 2d 71, 83; *Krug* v. *Pitass*, 162 N. Y. 154.)

Courts in other jurisdictions have awarded exemplary damages for wrongful expulsion or suspension. (See *Manning* v. *Kennedy*, 320 Ill. App. 11, where the court found a malicious conspiracy; *Taxicab Drivers' Local Union No. 889* v. *Pittman*, 322 P. 2d 159 [Okla.], where the ground of the complaint was found to be a malicious interference with the plaintiff's right to work; *Harper* v. *Gribble*, 143 Col. 502, where the official's contention that he was merely an agent of the union was rejected; *St. Louis Southwestern Ry. Co. of Texas* v. *Thompson*, 102 Tex. 89, where the court even included damages for mental suffering and humiliation.) The issue in each was stated in the *Pittman* case (p. 168): "Such damages are awarded in actions of this nature as punishment to the defendant, imposed for the benefit of society as a restraint upon him and as a warning and example to deter him and others from committing similar offenses in the future. They are highly penal. Yet, when the evidence plainly shows oppression, fraud, malice, or gross negligence in reckless disregard of another's rights, punitive damages are justified. *Oden* v. *Russell*, 207 Okl. 570, 251 P. 2d 184. They may be awarded against the principal for the acts of his agent. Kurn

v. Radencic, 193 Okl. 126, 141 P. 2d 580. The right to continue in his job without interference by third persons is a valuable right belonging to the plaintiff. *The malicious interference with this right justifies exemplary damages.* Chilton v. Oklahoma Tire & Supply Co. [180 Okl. 39, 67 P. 2d 27].'' (Emphasis supplied.)

Turning to the amended complaints at bar, Fittipaldi and Loniewski have sued defendant Legassie in his individual capacity and as president of the local union from which they were suspended. This is true as well as to Dashnau, president of the district council which authorized their trial, and Johnson, member of the general executive board of the International Brotherhood with which the others are associated in a parent-child relationship, and Lawyer, international representative of the brotherhood. (See *Fittipaldi* v. *Legassie,* 7 A D 2d 521, 523, *supra.*) Their first of three causes of action alleges that Johnson, in 1954, acting as a representative of the brotherhood, compelled officers of the local union to resign and arbitrarily appointed new ones in their place; that Legassie, as acting president of the local, failed and refused to hold a new election after demand, and that these two, Lawyer and other officers, agents and members of the union, the district council and the brotherhood '' capriciously and wrongfully refused to conduct a general election ''.

Their second cause of action recites the events on December 16, 1955, when a general meeting was held in which the membership voted against a motion to increase dues, but Legassie ruled that the motion was carried. This was allegedly '' unauthorized, improper and contrary to the expressed will of the members '' of the local union. Loniewski demanded compliance with the vote so Legassie '' in collaboration with an accomplice on the floor '' recognized an accomplice in spite of the fact that Fittipaldi also requested to speak. The meeting was adjourned after Legassie told Fittipaldi to sit down. Charges were then lodged against the two plaintiffs four days later by Legassie. These were allegedly '' made with the intention of depriving Loniewski of his right to justly criticize the wrongful, improper and unlawful practices '' of the defendants '' in running the affairs of Local #12 in contradiction to the will of its members and to further [their] dictatorial control ''. Fittipaldi adds that charges against him were '' false, untrue and * * * amounted to a sham attempt by defendants * * * to silence all those who disagreed with the undemocratic methods that they were employing to control and dominate Local #12.'' The

composition of the trial committee was discussed in our previous opinion. Allegedly it consisted of members who along with Dashnau and other officers of the brotherhood "conspired to fine and suspend the plaintiffs, irrespective of any evidence". Over objection by plaintiff Morrison, who acted as "counsel" for the other appellants a sham hearing was held at which no evidence was offered and which resulted in a fine and suspension for contempt as the plaintiffs refused to stand trial. This was, in the words of the complaint, "unlawful, excessive, recriminative and unreasonable". An appeal would have been futile because "of a conspiracy between defendants and other persons in control of Local #12, the District Council and the United Brotherhood".

The third cause of action refers to an additional trial before the "trial committee of the District Council" in April, 1956 at which the plaintiffs again refused to stand trial and a "recriminative, unreasonable and void" fine was imposed. It is alleged that the district council had a predetermined and standing trial committee which consisted of a selected, biased and prejudiced group of its members.

Morrison, who belonged to a different union from that of Fittipaldi and Loniewski, sued Foley, the president of his union, both individually and in his representative capacity, and Dashnau. He claims that for his participation as counsel and for statements made at that time charges were filed against all three plaintiffs which were heard before the same trial committee that had placed Fittipaldi and Loniewski in contempt. This was a biased and prejudiced 11-man group including one who was the complaining witness. Although he did not sit, he chose "by lot" the five who did.

In the light of these allegations we cannot say that exemplary damages would be improper. Malice may be demonstrated without alleging it by words of art (*Knibbs* v. *Wagner,* 14 A D 2d 987; *Gill* v. *Montgomery Ward & Co.,* 284 App. Div. 36, 41). As Justice HISCOCK so well stated, all the definitions of the constituent elements involve either the ideas behind those terms or "of such a perverse or obstinate failure to discharge some duty as warrants the presumption of a reckless indifference to the rights of others which is equivalent to intentional misconduct" (*Costich* v. *City of Rochester,* 68 App. Div. 623, 626).

We do not pass upon the amount of exemplary damages to be awarded nor do we attempt to forecast whether the proof will be sufficient to justify such an award. That is a question in the first instance for the trier of the facts (1 Clark, New York Law

of Damages, § 56, pp. 99–102; *Walker* v. *Sheldon, supra*; *Douglas* v. *Tomkins Realty Corp., supra*).

We do not believe, however, any such damages should be awarded against the local union if it was merely the tool of the alleged wrongdoers. (See *Miller* v. *Building Serv. Maintenance, Local 400*, 16 A D 2d 211, 212.) Under the amended complaint, however, proof may be offered to show ratification by Local No. 12, the district council and the International Brotherhood, or at least such a relationship between these groups and the defendants that knowledge and indorsement of their conduct may be imputed. (See 1 Clark, New York Law of Damages, § 50, pp. 92–93.) If such proof is presented, it may form the basis for an award of exemplary damages.

Passing now to the issue of counsel fees, these have been allowed in class actions where as a result of the litigation benefits are obtained. Among these are the "elimination of financial abuses and the correction of faulty keeping of records and accounts, the establishment of safeguards to promote fair elections, the replacement of the former officers by an international trustee and other advantageous changes" (*Murray* v. *Kelly*, 14 A D 2d 528, affd. 11 N Y 2d 810). The record on this trial shows certain abuses in the keeping of the convenience list by business agents of the unions and the previous trial pointed out the improper method of conducting elections and of appointing officers. In these respects counsel for the plaintiffs has materially benefited the general membership of the unions by pointing out and aiding to correct such abuses. They should be compensated for the reasonable value of such service to the union and an award should include similar fees for preparing for and undertaking a new trial. Proof should be taken as to the reasonable value of all the services so rendered. This is not a situation where the funds of a union are used to defend officers charged with wrongdoing. (See *Milone* v. *English*, 306 F. 2d 814 and cases cited therein at p. 817.) It was said in dictum in the *Milone* case (p. 817): "The treasury of a union is not at the disposal of its officers to bear the cost of their defense against charges of fraudulently depriving the members of their rights as members".

Upon the retrial no restriction should be placed upon the admission of all evidence which will fully explore all issues referred to herein, notwithstanding that much of it may well be repetitious of proof heretofore taken. Full latitude should be given to present all admissible proof to the end that the retrial will resolve all the rights of all the parties.

WILLIAMS, P. J., BASTOW, McCLUSKY and HENRY, JJ., concur.

Judgment, insofar as appealed from, unanimously reversed on the law and facts, with costs to appellants, and a new trial granted.