INTERNATIONAL BROTHERHOOD OF BOILERMAKERS, IRON SHIPBUILDERS, BLACKSMITHS, FORGERS AND HELPERS, Appellant,

v.

E. T. BRASWELL, Appellee.

No. 23776.

United States Court of Appeals
Fifth Circuit.

Jan. 12, 1968.

Donald E. Brutkiewicz, Mobile, Ala., John J. Blake, Kansas City, Kan., for appellant.

Robert E. McDonald, Jr., Mobile, Ala., for appellee.

Before WISDOM and GODBOLD, Circuit Judges, and McRAE, District Judge.

WISDOM, Circuit Judge.

In this action against the International Brotherhood of Boilermakers, Iron Shipbuilders, Blacksmiths, Forgers and Helpers, AFL–CIO, the plaintiff, E. T. Braswell, alleges that he was wrongfully expelled from the Union. He asserts that this expulsion was in violation of his rights under the "Bill of Rights of Members of Labor Organizations" of the Labor-Management Reporting and Disclosure Act of 1959 (LMRDA), 29 U.S.C. § 401 et seq. He relies particularly on 29 U.S.C. § 411(a) (5):

(5) Safeguards against improper disciplinary action.—No member of any labor organization may be fined, suspended, expelled, or otherwise disciplined except for nonpayment of dues by such organization or by any officer thereof unless such member has been (A) served with written specific charges; (B) given a reasonable time to prepare his defense; (C) given a full and fair hearing.

(b) any provision of the constitution and bylaws of any labor organization which is inconsistent with the provisions of this section shall be of no force or effect.

Braswell seeks compensatory and punitive damages only, and not reinstatement.

The jury returned a verdict in favor of the plaintiff in the amount of $12,500, and the Court entered a judgment in that amount. The Union appeals. We affirm.

\* \* \*

Braswell had been a member of the International since 1909, and at the time of his expulsion was a member in good standing of Local 112 in Mobile, Alabama. In the fall of 1960 there was considerable dissension in the Union over the local business manager's allegedly discriminatory assignment of jobs.[1] On October 5, 1960, the business manager, Herman B. Wise, after reading his morning mail, left his office for a local plant where he intended to engage in union business. As he walked out, George Hardeman, one of the members of the Union, met him, handed him a telegram and asked Wise, "Can you explain this to me?" Before Wise could finish reading it, Hardeman struck him in the face. Several other members were "standing around". One clutched at Hardeman, but another threatened to "drop him in his tracks" if he did not release Hardeman. Braswell took no part in the actual fighting but remarked to the man holding Hardeman, "You keep your hands off of him." The police were called. As Wise recounted the incident to a police officer, he pointed to Braswell and said, "And this man was standing here." At this point Braswell struck Wise in the face, breaking his nose.

Wise charged Braswell, Hardeman, and another member with violations of Article 13, Section 1 of the Subordinate Lodge Constitution[2] and Article 12, Section 1

---

1. The chronology of events is unclear in the record and in the briefs; the parties are not in agreement as to any of the dates. We have tried to reconstruct the sequence from the testimony offered at the trial, insofar as possible. Any inaccuracies, however, are not relevant to the issues before this Court.

2. Article XIII, Section 1:
"Any member who endeavors to create dissension among the members; or who works against the interest and harmony

of the International Brotherhood or of any District or Subordinate Lodge; who advocates or encourages a division of the funds, or the dissolution of any District or Subordinate Lodge, or the separation of any District or Subordinate Lodge from the International Brotherhood; who supports or becomes a member of any dual or subversive organization which shall be hostile to the International Brotherhood or to any of its Subordinate Lodges, or which is antagonistic to the principles and purposes of

of the Subordinate Lodge Bylaws.[3] A local trial panel conducted a hearing on the charges, found Braswell guilty, and ordered his explusion. He appealed to the Executive Council of the International Union. After another hearing, the Council affirmed the decision of the trial board. Braswell made a final appeal to the President of the International. This appeal was also rejected. He was then formally expelled from the Union. None of these decisions states whether it is based on both or only one of the violations charged. On September 12, 1963, Braswell filed an amended complaint in the district court alleging that the expulsion was wrongful under LMRDA and asking for damages.

## I.

### Jurisdiction

The Union challenges the jurisdiction of the district court over the subject matter on the ground that the National Labor Relations Act, 29 U.S.C. § 151 et seq., preempted the cause of action.

There may be certain ambiguities in LMRDA, but the act does unequivocally state that the rights secured by the bill of rights are to be enforced through private suits and that such suits shall be brought in the district courts.[4] Section 102 of the LMRDA, 29 U.S.C. § 412, provides:

> Civil action for infringement of rights; jurisdiction: Any person whose rights secured by the provisions

of this subchapter have been infringed by any violation of this subchapter may bring a civil action in a district court of the United States for such relief (including injunctions) as may be appropriate. Any such action against a labor organization shall be brought in the district court of the United States for the district where the alleged violation occurred, or where the principal office of such labor organization is located.

At the same time, under Section 103, 29 U.S.C. § 413, union members retain whatever rights and remedies they may have "under any State or Federal law or before any court or other tribunal, or under the constitution and bylaws" of their unions.

The Union relies on San Diego Building Trades Council, Millmen's Union v. Garmon, 1959, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775. In *Garmon* the Court held:

> "When an activity is *arguably* subject to § 7 and § 8 of the [National Labor Relations] Act, the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted." 359 U.S. at 245, 79 S.Ct. at 780. (emphasis added).

The Union suggests that the expulsion of Braswell was *"arguably"* an unfair labor practice under the NLRA, and that

---

the International Brotherhood, shall upon conviction thereof be punished by expulsion from the International Brotherhood."

3. Article XII, Section 1:
 "In addition to the offenses and penalties set out in the applicable provisions of the International and Subordinate Lodge Constitution, the following offenses and penalties shall be observed in this Subordinate Lodge, and any member who violates same shall, if found guilty after proper hearing as provided herein, be punished as warranted by the offense. "(1) It shall be a violation of three By-Laws for any member through the use of force or violence to restrain, coerce or intimi-

date, or attempt to restrain, coerce or intimidate any official of this International Brotherhood or Subordinate Lodge to prevent or attempt to prevent him from properly discharging the duties of his office.
 \* \* \*

4. Earlier versions of the legislation had provided for enforcement of the bill of rights by the Secretary of Labor and for criminal penalties for the unions and union officials who committed such violations of their provisions. In the final version, Congress left enforcement of these rights entirely to private suits. See Rothman, Legislative History of the "Bill of Rights" for Union Members, 45 Minn.L.Rev. 199, 216–17 (1960).

exclusive jurisdiction therefore lies with the NLRB. This assertion is erroneous on two counts.

First, the purpose of the *Garmon* rule is to prevent conflicts between federal and state policy. Here, if there is any conflict at all, it is between two federal organs expressing federal policy, and Congress has declared that federal courts, and not the National Labor Relations Board are to have the primary role. "Garmon * * * merely rationalizes the problems of coexistence between federal and state regulatory schemes in the field of labor relations * * *. The purpose of Congress is the ultimate touchstone." Retail Clerks International Association, etc. v. Schermerhorn, 1963, 375 U.S. 96, 103, 84 S.Ct. 219, 222, 11 L.Ed.2d 179.

Second, the cause of action here involved is not arguably subject to the jurisdiction of the Board. When a dispute is solely between the member and his union and does not directly concern rights granted by the NLRA, the preemption doctrine does not come into play. International Association of Machinists v. Gonzales, 1958, 356 U.S. 617, 78 S.Ct. 923, 2 L.Ed.2d 1018; Local 100 of United Association of Journeymen and Apprentices v. Borden, 1963, 373 U.S. 690, 83 S.Ct. 1423, 10 L.Ed.2d 638; Local No. 207, International Association of Bridge, Structural and Ornamental Iron Workers Union v. Perko, 1963, 373 U.S. 701, 83 S.Ct. 1429, 10 L.Ed.2d 646. See also Vaca v. Sipes, 1967, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842.

The question is one of congressional intent—did Congress intend to give the NLRB exclusive primary jurisdiction over the subject matter? In both *Bor-*den and *Perko* the Court answered "yes". But neither the preemption doctrine nor the primary jurisdiction doctrine has constitutional bases. A clear indication therefore of congressional intent to confer jurisdiction on the federal district courts to award damages for actions— even if these actions were arguably violations of the NLRA and within the jurisdiction of the NLRB—would control.[5]

The result is in accord with other federal courts which have passed on the question. See Addison v. Grand Lodge of International Association of Machinists, 9 Cir. 1962, 300 F.2d 863; Parks v. International Brotherhood of Electrical Workers, 4 Cir. 1963, 314 F.2d 886, 922– 923, cert. denied, 372 U.S. 976, 83 S.Ct. 1111, 10 L.Ed.2d 142; Rekant v. Shochtay-Gasos Union Local 446 of Amalgamated Meat Cutters and Butcher Workmen of North America, 3 Cir. 1963, 320 F.2d 271, 273–275; Grand Lodge of International Association of Machinists v. King, 9 Cir. 1964, 335 F.2d 340, 346–347; cert. denied, 379 U.S. 920, 85 S.Ct. 274, 13 L.Ed.2d 334; Burns v. United Brotherhood of Carpenters and Joiners of America, Local No. 626, D.Del.1962, 204 F.Supp. 599, 601–602.[6]

The appellant's attempt to argue that the conduct of which appellee complains constitutes an unfair labor practice (coercion of an employee in the exercise of his rights or of an employer to discriminate) is of no relevance. Even if the conduct is arguably subject to the NLRA (which is doubtful), it is *also* a violation of the LMRDA Act. A clear Congressional directive that federal courts have jurisdiction to entertain suits for damages has precedence over application of

---

5. For many years, before the passage of LMRDA, state courts heard suits by union members against their unions alleging that they had been unfairly disciplined or expelled. See Summers, The Law of Union Discipline: What the Courts do in Fact, 70 Yale L.J. 175 (1960). There is nothing here to indicate an unfair labor practice under the NLRA that would bring the Garmon doctrine into play.

6. In Barunica v. United Hatters, Cap and Millinery Workers, Local 55, 8 Cir. 1963, 321 F.2d 764, a complaint alleging that the union had unlawfully failed to refer the plaintiff out on employment was dismissed as not stating a cause of action under LMRDA, the court noting that it was properly an unfair labor practice cognizable before the NLRB. See Thatcher, Rights of Individual Union Members Under Title I and Section 610 of the Landrum-Griffin Act, 52 Georgetown L.J. 339, 361–62 (1964).

the primary jurisdiction rule. We hold that the district court had jurisdiction of this action under Section 412.[7]

## II.

### Jury Trial

In his amended complaint, Braswell demanded a trial by jury. The Union made a timely motion to strike this demand. The district court denied the motion, and the case was heard and decided by a jury. The Union renews here its objection to the jury trial.

The Act itself does not indicate whether a jury trial is to be granted for suits under Section 412. The language of the jurisdictional grant, that "such relief (including injunctions) as may be appropriate" may be afforded indicates that Congress contemplated the entire range of remedies, both legal and equitable. Braswell sought only damages; he did not ask to be reinstated in the Union which had expelled him. In traditional terms, then, his cause of action was purely "legal" in nature.

We find only two federal cases on the question whether a jury trial is required in an action for wrongful expulsion under LMRDA. In McCraw v. United Ass'n of Journeymen and Apprentices, 1965, 341 F.2d 705, 709–710, the Sixth Circuit held that a section 412 proceeding was one unknown at common law, and therefore not within the guarantee of the Seventh Amendment. The court characterized the proceeding as one in equity for reinstatement, with damages merely an incident to relief, and therefore held that a jury trial was not proper. In Simmons v. Avisco, Local 713, Textile Workers Union of America, 1965, 350 F.2d 1012, the Fourth Circuit rejected the McCraw holding. Judge Sobeloff, for the Court, held that although LMRDA created new rights, and the cause of action was partly equita-

ble, the plaintiff did not lose the right to a jury trial:

"The right asserted is indeed one created by statute, but we do not agree that a jury trial is necessarily unavailable because the suit for damages is one to vindicate a statutory right. There is no such cleavage between rights existing under common law and rights established by enacted law, where the relief sought is an award of damages. [citing cases and authorities]

The plaintiff here is suing both at law and in equity. He seeks an injunction to effect his restoration to membership. He also seeks money damages for injury to reputation, and resulting mental anguish—a cause of action of which the developing common law of torts certainly takes cognizance. We see no reason for not allowing a jury to determine whether the union's wrongful conduct was the proximate cause of the plaintiff's injuries and how much the plaintiff is entitled to recover therefor. * * * Where issues underlying equitable and legal causes of action have been exactly the same, the Supreme Court has been careful to preserve a litigant's right to jury trial on the factual issues, even where a stronger basis was presented for equitable than for legal relief. See Dairy Queen v. Wood, 369 U.S. 469, 473, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962); Thermo-Stitch, Inc. v. Chemi-Cord Processing Corp., 294 F.2d 486, 491 (5th Cir. 1961)." 350 F.2d at 1018.

We find Judge Sobeloff's reasoning persuasive. We need not decide, however, whether a plaintiff is always entitled to a jury trial in a section 412 action seeking both legal and equitable relief. Here, where the plaintiff prays for money damages only, the action cannot be characterized as one for reinstatement with money damages as inci-

---

**7.** The very union which is appellant here has defended other suits brought under the jurisdiction of § 412. Vars v. International Brotherhood of Boilermakers, D.Conn.1962, 215 F.Supp. 943, affirmed, 2 Cir. 1963, 320 F.2d 576; International Brotherhood of Boilermakers, etc. v. Rafferty, 9 Cir. 1965, 348 F.2d 307.

dental. Here he should be entitled, at his request, to have a jury determine whether the Union's wrongful conduct was the proximate cause of his injuries and the amount of his damages. The district court correctly denied the Union's motion to strike the jury trial demand.

### III.

### The Expulsion

Braswell does not deny that he struck Wise in the face and broke his nose. The question is whether this act constituted a violation of the Union Constitution and Bylaws that would justify his expulsion.[8] As noted, the Union charged Braswell with violations of two provisions, set out in footnotes 2 and 3. The union trial board simply returned a general verdict of guilty, without specifying whether Braswell violated both or only one of the sections. Since expulsion is mandatory under Article XIII, Section 1 and is also permissible under Article XII, Section 1 of the bylaws if warranted by the offense, the penalty affixed is of no help in determining the scope of the trial board's finding.

■ The district court found as a matter of law that there was no evidence to support a finding of guilt under Article XIII of the Constitution. For reasons to be stated, we agree with this finding. The district court declined to rule on whether Braswell violated Article XII of the bylaws, because there was no evidence in the record that the expulsion rested upon a "conviction" under that article. In view of the invalidity of the first charge and the failure to specify by the union board, Braswell was prejudiced in his defense and appeal and the expulsion was therefore invalid. While such lack

of specificity might constitute a violation of the administrative due process guaranteed by Section 411(a) (5), we reach the same result on the ground that, under the authorities, Braswell's expulsion was not valid under either provision mentioned in the charges. "[A] union cannot discipline its members except for offenses stated in its constitution and by-laws, and * * * courts lack the power to recognize 'implied offenses' and thereby rewrite the union's constitution." Simmons v. Avisco, Local 713, 350 F.2d 1012 (4th Cir. 1965).

This Court dealt with a very similar question recently in Allen v. International Alliance of Theatrical, Stage Employees and Moving Picture Mach. Operators, 5 Cir. 1964, 338 F.2d 309. Allen was expelled from his union on a charge that he had violated a provision of the constitution which, by its terms was inapplicable to him. The evidence, however, established that he was guilty of violating another provision of the constitution, but he was not charged under that provision. In affirming the judgment of the district court, finding the expulsion unlawful and awarding reinstatement and damages, we stated:

"It is well established that penal provisions in union constitutions must be strictly construed. In McCraw v. United Ass'n of Journey [sic] & App. of Plumbing etc., Inc., [sic] E.D.Tenn. 1963, 216 F.Supp. 655, 662, a decision under the Landrum-Griffin Act, the Court pointed out: 'In determining whether discipline was properly imposed * * * any ambiguity or uncertainty in the constitution must be construed against the union and in favor of the member, in accordance

**8.** Section 101(a) (5) of the LMRDA provides that, except for non-payment of dues, no union member may be "suspended, expelled, or otherwise disciplined" unless he has been "(A) served with written specific charges; (B) given a reasonable time to prepare his defense; (C) afforded a full and fair hearing." Several of the twelve counts in Braswell's amended complaint alleged procedural defects in the manner of selection of the union trial board, the notice given to Braswell of the trial, the manner in which the hearing was conducted, and domination of the trial board by Wise, the complainant. The trial court ruled against Braswell on several of these, and did not formally rule either way on others. As Braswell took no exception to these rulings below, and does not contest them here, these matters are not before this court.

with well established principles of documentary construction.'" 388 F.2d at 316.

Here, as in *Allen*, we also rely on Vars v. International Brotherhood of Boilermakers, 2 Cir. 1963, 320 F.2d 576, 578. There the court observed:

"[I]mplicit in the requirement of a full and fair hearing is the requirement that there be some evidence to support the charges made. * * * Thus, although the courts may be without power to review matters of credibility or of strict weight of the evidence, a close reading of the record is justified to insure that the findings are not without any foundation in the evidence.

Applying these principles to the undisputed underlying facts we find that the act charged to Braswell was a blow struck in anger, and nothing more. However reprehensible this act may be, it did not constitute a violation of the provisions in the charges. Article XIII, Section 1 of the constitution on its face is directed at threats to the union as an organization and to the effective carrying out of the union's aims. Braswell's fist was not such a threat. Article XII, Section 1 of the bylaws proscribes the use of force or violence where the purpose of such force is to prevent an officer of the union "from properly discharging the duties of his office." There is no evidence that Braswell was motivated by this purpose when he struck Wise. Accordingly, we affirm the ruling of the district court that the expulsion was unlawful under Section 411(a)(5).

## IV.

### Compensatory Damages

 The trial judge charged the jury that if it found that Braswell had suffered any actual damages as a proximate result of his unlawful expulsion, he should be awarded an amount to compensate him for such loss. Compensatory damages are proper relief for an unlawful expulsion under LMRDA. See Simmons v. Avisco, Local 713, Textile Workers Union, 4 Cir. 1965, 350 F.2d 1012. As the jury was instructed also on punitive damages, discussed below, and brought in a general verdict, without stating what amounts were allotted to the two types of award, we must assume that some part may have been compensatory. The Union asserts that there was insufficient evidence on the record to support an award of compensatory damages. It is true that Braswell's claim that he lost union insurance and welfare rights was sufficiently countered by testimony and documents showing that he was not eligible, even had he remained a member, but there was testimony regarding the average earnings of a boilermaker, that non-union members would find difficulty in securing work, and regarding Braswell's earnings before and after his expulsion, from which the jury might have found that he was damaged. We find no fault with the instructions regarding compensatory damages.

## V.

### Punitive Damages

The trial judge also instructed the jury that if it found that the Union had acted with "actual malice or wreckless or wanton indifference to the rights of the plaintiff" it might award punitive damages; that such damages were a punishment to the wrongdoer to be related to the gravity of the wrong; and that such damages were unrelated to the award of compensatory damages. We agree that this was a correct statement of the law of punitive damages and that there was sufficient evidence for the jury to find that the Union had acted with malice or wanton indifference. The Union contends, however, that LMRDA does not permit the award of punitive damages under any circumstances. As the jury brought a general verdict, and as the evidence regarding actual damages was slight, we cannot assume that no punitive damages were awarded, and we therefore consider this contention.

We have been able to find nothing in the legislative history of LMRDA which touches directly on this question. Three reported decisions, all in district courts, discuss the point. Burris v. International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers, W.D.N.C. 1963, 224 F.Supp. 277, 280–281 and Cole v. Hall, E.D.N.Y.1964, 35 F.R.D. 4, 8, affirmed on other grounds, 2 Cir. 1965, 339 F.2d 881 held that the Act did not permit punitive damages,[9] Farowitz v. Associated Musicians of Greater New York, Local 802, S.D.N.Y.1965, 241 F. Supp. 895, 909, held that it did.[10]

The jurisdictional provision, Section 412, permits the granting of "such relief * * * as may be appropriate." We do not agree with the court in Cole v. Hall that the use of the word "relief" necessarily rules out punitive damages which are strictly speaking not in the nature of relief. We feel it to be appropriate therefore to look to the purposes of LMRDA, and particularly the "Bill of Rights" section to determine whether the granting of punitive damages would serve to best effectuate those purposes.

In the statutory statement of findings and purposes of LMRDA Congress declares that there are instances of unions' "disregard of the rights of individual employees" and that it "is necessary to eliminate or prevent improper practices on the part of labor organizations * * *" 29 U.S.C. § 401. The awarding of punitive damages in appropriate cases serves as a deterrent to those abuses which Congress sought to prevent.

The state courts, and particularly those of New York have had considerably more experience in curbing abuses in the internal affairs of unions than have had the federal courts in the few years since the passage of LMRDA. It is not inappropriate for the federal courts, in ex-

ercising their newly granted jurisdiction to look to this expertise as a guide. "The experience of state courts, both their successes and their failures, can provide helpful guides in devising remedies to make the statutory rights effective." Summers, The Law of Union Discipline: What the Courts do in Fact, 70 Yale L.J. 175, 177 (1960). With this in mind, we find persuasive the statement of the New York Supreme Court, Appellate Division, in Fittipaldi v. Legassie, 18 A.D.2d 331, 239 N.Y.S.2d 792, 796:

"Strong reasons of policy promote the use of exemplary damages to deter union officials from conduct designed to suppress the rights of members to a fair and democratic hearing on legitimate disciplinary charges. The very basis for the existence of unionism in our society today is the promise of employment to those who desire to associate freely in order to obtain it. The right of the working man to the benefits of collective bargaining is too essential and valuable to be hindered, impeded and seriously damaged by irresponsible and dictatorial leaders whose dominance in any given situation does great disservice to the purpose and principles of unionism. When that right of free association is usurped by a concerted, malicious effort to deprive the individual of the safeguards built into the organization, it cannot be condoned. * * * Imposition of exemplary damages, when the requisite elements of malice, gross fraud, wanton or wicked conduct, violence or oppression are present, serves to achieve the deterrence they were designed to effect."

■■ We hold that the district court did not err in instructing the jury that it might award punitive damages. As in all remedial legislation, LMRDA

---

9. Cf. McCraw v. United Ass'n of Journeymen & App. of Plumbing, etc., 216 F. Supp. 655, 662–663.

10. Of course, the district court in this case permitted punitive damages, and the district court in Allen v. International Alliance of Theatrical, Stage Employees and Moving Picture Mach. Operators, 5 Cir. 1964, 338 F.2d 309, sitting without a jury awarded punitive damages, see id. at 314. The question was not raised on appeal in that case.

should be liberally construed to effectuate its purposes.[11]

For the reasons stated, the judgment of the district court is

Affirmed.

---

11. Cf. Simmons v. Avisco, supra, 350 F.2d at 1018, 1019, where the court upheld an award of $15,000 in damages to compensate the plaintiff for injury to reputation and resulting mental anguish caused by his unlawful expulsion from the union.