Alfred E. KEENE, Plaintiff-Appellee Cross-Appellant,

v.

INTERNATIONAL UNION OF OPERATING ENGINEERS, LOCAL 624, AFL–CIO, R. H. Byrd and Stanley Byrd, Sr., Defendants-Appellants Cross-Appellees.

No. 76–1997.

United States Court of Appeals, Fifth Circuit.

March 27, 1978.

C. T. Sykes, Jr., Gulfport, Miss., for plaintiff-appellee cross-appellant.

Lawrence W. Rabb, Meridian, Miss., for Greater Miss. Life Bldg.

Thomas M. Hendricks, Jr., Meridian, Miss., for defendants-appellants cross-appellees.

Before TUTTLE, CLARK, and RONEY, Circuit Judges.

CHARLES CLARK, Circuit Judge:

The defendants, Local 624 of the International Union of Operating Engineers, R. H. Byrd, business agent of Local 624, and Stanley Byrd, an assistant business agent, appeal the judgment entered by the district court following a jury trial. The jury awarded compensatory and punitive damages to the plaintiff, Alfred E. Keene, a member of Local 624, for defendants' violation of rights guaranteed him by Section 411 of the Labor-Management Reporting and Disclosure Act of 1959.[1] The defendants challenge the judgment of the district court on these grounds: (1) improper divisional venue, (2) failure of Keene to exhaust internal union remedies, (3) preemption of the cause of action by the National Labor Relations Board, (4) lack of Section 412 jurisdiction because of the insufficiency of the evidence to show a violation of Section 411 rights, (5) error in finding union officials personally liable for damages, and (6) improper computation of damages. Keene cross-appeals from the district court's order requiring a remittitur. Finding all challenges without merit, we affirm the final judgment of the district court.

Keene, a resident of Clarke County, Mississippi, has been a member of Local 624 since 1957. In August 1970, he ran for vice president and for auditor of Local 624 on a slate with Boyce Andrews, who ran for business agent. Keene lost the race for vice president but was elected auditor. In a court-ordered second election, Keene lost both of his races and the defendant R. H. Byrd defeated Andrews for the position of business agent. R. H. Byrd appointed his brother, the defendant Stanley Byrd, an assistant business agent of Local 624. Keene's complaint alleged that the Byrds improperly used their positions in Local 624 to seek revenge for Keene's political opposition.

Based upon a series of agreements with employers in the building and construction trades, Local 624 operates a hiring hall through which it refers union members to work. Union members who wish to be referred to a job place their names on out-of-work lists maintained in Gulfport and Jackson. Keene charges that since January 1972, Local 624 and the Byrds have deliberately and maliciously boycotted him by refusing to give him any bona fide assignment to work. Keene alleged that, although he properly entered his name on the lists in Gulfport and in Jackson, he received only three calls prior to the date he filed this lawsuit, September 12, 1973. The union allegedly made those three calls in a manner calculated to insure that he would have no genuine opportunity to secure the job offered. Keene complained that frequently he found his name stricken from the out-of-work lists, although under union procedures his name should have remained on the lists until the hiring hall referred him to work. At trial Keene introduced evidence that the Byrds had made statements indicating their intent to "starve him out" in retribution for his exercise of union internal civil and political rights protected by Section 411. After Keene entered a formal complaint with Local 624, the Executive Board held a hearing. The union did not produce the hiring hall records despite a written request from Keene's attorney, whom union officials barred from the hearing. The Executive Board failed to grant Keene any relief. Benny Splain, president of Local 624, ignored Keene's subsequent letter requesting further proceedings within the union.

Keene alleged that the defendants' boycott injured him in the amount of $25,000

---

1. 29 U.S.C.A. § 411 (1975). Jurisdiction to sue for a violation of Section 411 rights rests upon 29 U.S.C.A. § 412 (1975).

and that the wanton, willful, and malicious nature of the acts warranted punitive damages in the amount of $100,000 including attorneys' fees.[2] The jury awarded $25,000 actual damages and $37,500 punitive damages. The district judge ordered a remittitur to the amount of $10,000 actual damages and $15,000 punitive damages, which Keene accepted under protest. When the defendants appealed, Keene cross-appealed to reinstate the jury verdict.

The defendants contend that we must overturn the district court's judgment because divisional venue could not be laid in the Eastern Division of the Southern District of Mississippi. Section 412 of the Labor-Management Reporting and Disclosure Act sets forth the requirements for district venue, but does not specifically mention divisional venue.[3] Defendants assert that the general divisional venue statute, 28 U.S.C.A. § 1393, therefore must govern.[4] Under Section 1393, venue would be improper in the Eastern Division, because Local 624 has its principal office in the Jackson Division and the Byrds live in the Southern Division. The union does not have an office in the Eastern Division.

Keene maintains that the general divisional venue statute, Section 1393, does not govern because Section 412 "otherwise provides" by setting forth standards for determining district venue. Keene asserts that Section 412 standards should govern divisional venue as well and that his suit falls within the exception in Section 1393. Therefore, venue could be laid where the cause of action arose, which Keene contends is the Eastern Division, where he was injured when the union failed to call him.

 It is unnecessary to decide between these theories because the defendants have waived any objection to improper venue by their failure to object prior to trial. Unlike jurisdiction, venue can be waived. See Neirbc Co. v. Bethlehem Shipbuilding Corp., 308 U.S. 165, 168, 60 S.Ct. 153, 155, 84 L.Ed. 167 (1939). Before the district court, the defendants never questioned the propriety of venue. Quite to the contrary, their only pretrial motion directed toward venue rested on the assumption that venue was proper in the Eastern Division. Defendants filed a motion to transfer the case to the Southern Division which adopted the language of 28 U.S.C.A. § 1404:

·That it would be in the best interest of the parties, witnesses, and in the interest of justice that this cause be transferred to the Southern District of the Southern Division [sic] of this Honorable Court.

By its nature, a Section 1404 motion affirms the propriety of venue in the forum where a party enters the motion, but seeks transfer to another allegedly more convenient forum where venue also is proper. The motion did not state or suggest an objection to the propriety of venue in the Eastern Division. The district court acted within its discretion in refusing to transfer the case under Section 1404, and defendants have waived any right to raise on appeal that the court sitting in the Eastern Division lacked divisional venue.

 Defendants contend that Keene failed to exhaust his internal union reme-

2. Keene also sought an injunction requiring the defendants to refer him to work in the future in his rightful turn on the out-of-work lists at the union hiring halls. The district court, in entering judgment, retained jurisdiction of the request for an injunction. It is not an issue in this appeal.

3. Section 412 provides:

Any person whose rights secured by the provisions of this subchapter have been infringed by any violation of this subchapter may bring a civil action in a district court of the United States for such relief (including injunctions) as may be appropriate. *Any such action against a labor organization shall be brought in the district court of the United*

*States for the district where the alleged violation occurred, or where the principal office of such labor organization is located.*
29 U.S.C.A. § 412 (1975). [Emphasis added.]

4. Section 1393 provides:

(a) Except as otherwise provided, any civil action, not of a local nature, against a single defendant in a district containing more than one division must be brought in the division where he resides.

(b) *Any such action, against defendants residing in different divisions of the same district or different districts in the same State, may be brought in any of such divisions.*
28 U.S.C.A. § 1393 (1976). [Emphasis added.]

dies prior to filing suit in district court. The district court, responding to defendants' motion for judgment notwithstanding the verdict, held that the manner in which Local 624 conducted Keene's internal union hearing justified his conclusion that further processing of his complaint within the union would serve no purpose. We agree. Pursuant to Section 411 (a)(4), a union member "may be required to exhaust reasonable hearing procedures (but not to exceed a four-month lapse of time) within such organization, before instituting legal or administrative proceedings against such organizations or any officer thereof." Under *NLRB v. Industrial Union of Marine and Shipbuilding Workers,* 391 U.S. 418, 428, 88 S.Ct. 1717, 1724, 20 L.Ed.2d 706, 714 (1968), a court may consider whether a particular procedure was reasonable and entertain the complaint even though the procedures have not been exhausted. In the case at bar, the district court reasonably could have concluded that other avenues to relief within the union were abusively controlled by those whom Keene alleged were causing his injury so that these were not reasonable procedures which Keene had to exhaust prior to suit.[5] The union officials on the Executive Board had been Keene's political opponents. The exclusion of Keene's counsel from the initial Executive Board hearing and the refusal to allow witnesses or to produce the hiring hall lists at the core of Keene's complaint suggested that the defendants had little intention of seeking a just and reasonable accommodation. The union president deliberately ignored Keene's letter seeking further relief within the Union. Keene himself testified that during the closed-door meeting the Executive Committee made explicit the punitive purpose of the union's conduct toward him. The exhaustion requirement in Section 411(a)(4) does not include procedures which unreasonably promise only aggravation of

rather than relief from an infringement upon Section 411 rights.

■ The defendants deny that the district court had jurisdiction to consider Keene's complaint under Section 412 because primary jurisdiction over Keene's dispute with Local 624 lay with the National Labor Relations Board. This contention clearly has no merit. *International Brotherhood of Boilermakers v. Braswell,* 388 F.2d 193, 195–97 (5th Cir.), *cert. denied,* 391 U.S. 935, 88 S.Ct. 1848, 20 L.Ed.2d 854 (1968).

Defendants also contend Section 411 jurisdiction was lacking because the union had not subjected him to "other discipline" within the meaning of Section 411. In *Miller v. Holden,* 535 F.2d 912, 914–15 (5th Cir. 1976), this circuit defined discipline under Section 411 as that which

> conform[s] to the essential character of the specifically enumerated types of discipline—fine, expulsion, and suspension. This process [of reasoning] causes us to focus on the motivation of the union conduct and the manner in which the penalty is enforced. Union action which adversely affects a member is 'discipline' only when (1) it is undertaken under color of the union's right to control the member's conduct in order to protect the interests of the union or its membership, and (2) it directly penalizes him in a way which separates him from comparable members in good standing. [Footnote omitted.]

*Miller* further stated that discharge represents discipline "only when the member's employment status is a function of some internal union status, such as a hiring hall or, conversely, a union blacklist." 535 F.2d at 915. The district court's instructions to the jury adequately explained the meaning of "other discipline" in Section 411(a)(5), and the defendants offered no objection to them.[6]

---

5. *See Fulton Lodge No. 2, International Ass'n of Machinists v. Nix,* 415 F.2d 212, 216 (5th Cir. 1969); *Calagaz v. Calhoon,* 309 F.2d 248 (5th Cir. 1962).

6. The district judge gave the jury the following instructions on the meaning of "otherwise disciplined" under Section 411:

> The Court now instructs you that before you can find against the defendants or any of them the plaintiff must prove by a preponderance of the evidence that he was fined, suspended, expelled—and listen to this next one—or otherwise disciplined without being afforded a full and fair hearing . . . . [T]he only part of this act that we have any

The defendants conceded at oral argument that if Local 624 had in fact boycotted Keene for running against the Byrds, Keene would have undergone discipline within the meaning of Section 411(a)(5). If the occasion for this discipline had been Keene's opposition to the Byrds' candidacy, the union's action would have constituted improper discipline under Section 411(a)(2) which protects the internal political freedoms of union members. Because the defendants assert the lack of Section 412 jurisdiction in the face of the jury's finding of a Section 411 violation, we interpret this point of the appeal as a challenge to the existence of substantial evidence to support the jury's verdict.

■ The evidence presented at trial demonstrates that the jury reasonably could have concluded that Stanley and R. H. Byrd subjected Keene to "other discipline" within the meaning of Section 411(a)(5) to punish him for exercising rights guaranteed by Section 411. Principally, this case called upon the jury to choose between diametrically opposing accounts of crucial events by assessing witness credibility, a function particularly within the jury's sphere. Witnesses on both sides acknowledged that ill will existed between the Byrds and their political opponents, Boyce Andrews and the plaintiff Keene, following a hard-fought election which included legal challenges to the result. Likewise, the parties agreed that Stanley Byrd had control of the hiring hall lists for the Gulfport offices, while R. H. Byrd could influence to a disputed degree the operation of the hiring hall lists in the Jackson office. If the jury credited the accounts given by Keene and his witnesses, it could have found that R. H. Byrd once threatened to "starve him [Keene] to

death," and that Stanley Byrd told a group gathered at the union hall that, as for Keene and Andrews, "Those son of a bitches will crawl before they work out of this hall again." Keene testified that his name frequently was scratched from the hiring hall lists even though he had not been referred to work. The hiring hall lists introduced at trial showed that for the Gulfport office in 1972, about 210 persons who signed the out-of-work list after Keene received assignments in preference to him. For the Jackson office, 200 persons in 1972 and at least 275 persons in 1973 whose names went on the lists after Keene's got referrals in preference to him. Union officials could explain only a handful of these preferences by objective criteria apart from the contested allegation that Keene sought only long-term work. To show the existence of a boycott, Andrews testified that when he directed a potential employer who had contacted him personally to ask for him through the Gulfport hiring hall, the union told the employer that no one was available for the position. The inability of Assistant Business Agent Marbury to explain how the union resolved conflicting criteria for making job referrals allowed the jury to infer that the discretionary judgments of union officials played a significant role in deciding who got a job referral. Keene's testimony indicated the three referral calls he received were of a pretextual nature. His wife's testimony that she spent a great deal of time at home with a small child in 1972 and 1973 cast doubt on the defendants' contention that they had trouble reaching Keene to refer him to jobs. Finally, Keene testified that union officials made the disciplinary purpose of non-referral explicit in the closed-door Executive Board meeting,

reference to in this case is 'or otherwise disciplined' . . . . This term 'otherwise disciplined' is defined to mean discipline directed toward the member by the union regarding the membership rights, and those rights are the internal civil and political rights.

The Court further instructs you that before you may find for the plaintiff against either of the defendants the plaintiff must prove by a preponderance of the evidence that the said defendants, or each of them, engaged in a boycott of the plaintiff in that the defendants

unlawfully refused to refer the plaintiff on this referral list we've been talking about.

The Court further instructs you that even though you may feel that the defendants, or any one of them, have acted unjustly toward the plaintiff, you cannot find for the plaintiff unless and until the plaintiff has proved that the acts and/or actions of the defendants, or either of them, come within the meaning of those rights protected under the Labor Management Reporting & Disclosure Act.

from which Keene's counsel and all witnesses were barred. Under these circumstances, the jury reasonably could have concluded that the defendants' conduct toward Keene amounted to Section 411 discipline and that the purpose of the discipline was to penalize Keene for his political opposition to the Byrds' faction.

▮ In their defense, the Byrds advance an interpretation of Section 411 under which a district court could never assess damages against union officials. They contend that if the Byrds blacklisted Keene while acting as individuals, the district court had no jurisdiction under Section 412 and should have dismissed the action; or if the Byrds blacklisted Keene while acting in their official capacities, the judgment must stand against the union but cannot stand against them individually. This view is incorrect. Section 412 extends the jurisdiction of the district court to suits against individual union officials who, acting under color of their union authority, violate the Section 411 rights of union members. *See Morrissey v. National Maritime Union of America,* 544 F.2d 19, 24 (2d Cir. 1976); *Vincent v. Plumbers & Steamfitters Local No. 198,* 384 F.Supp. 1379, 1384 (M.D.La. 1974). Both reason and precedent support the district judge's view that, where the evidence shows that the defendants were agents of the union acting abusively within the scope of their union duties, damages could be assessed against them individually.[7]

▮ Next we consider the issue of damages. Keene cross-appealed the district court's order of remittitur after accepting the remittitur "under protest . . . provided, however, the plaintiff does not waive his right to file a cross appeal in the event the defendants file a notice of appeal." While Keene properly followed the

procedures which we have previously approved for limited review of remittitur orders, the Supreme Court's recent decision in *Donovan v. Penn Shipping Co.,* 429 U.S. 648, 97 S.Ct. 835, 51 L.Ed.2d 112 (1977), precludes his appeal. *Donovan* reaffirmed "the longstanding rule that a plaintiff in federal court, whether prosecuting a state or a federal cause of action, may not appeal from a remittitur order he has accepted." *Id.* at 650, 97 S.Ct. at 837, 51 L.Ed.2d at 114. Keene seeks to distinguish *Donovan* because in *Donovan* the plaintiff directly appealed the remittitur order while Keene challenged remittitur on cross-appeal after accepting it under protest and reserving his right to appeal only if the defendant filed an appeal. Keene cannot distinguish his case on this basis, however, because *Donovan* expressly disapproved our decision in *United States v. 1160.96 Acres of Land in Holmes County, Mississippi,* 432 F.2d 910 (5th Cir. 1970), in which we allowed appeal of a remittitur order in precisely this same cross-appeal situation. *See also Krahn v. B. F. Goodrich Co.,* 559 F.2d 308 (5th Cir. 1977).

▮ The defendants contend that a district court cannot award punitive damages for a violation of Section 411 rights. In *International Brotherhood of Boilermakers v. Braswell,* 388 F.2d 193 (5th Cir.), *cert. denied,* 391 U.S. 935, 88 S.Ct. 1848, 20 L.Ed.2d 854 (1968), we considered the policies served by the "Bill of Rights" in the Labor-Management Reporting and Disclosure Act and held that the district court did not err in instructing the jury that it could award punitive damages for violations of Section 411 rights. *Braswell* quoted with approval the following standard:

'Strong reasons of policy promote the use of exemplary damages to deter union officials from conduct designed to suppress the rights of members to a fair and dem-

---

7. Of course, officers of the union have a defense where they have acted within their official capacities and in a good faith effort to discharge their official duties. *White v. King,* 319 F.Supp. 122, 126 (E.D.La.1970). In the case at bar, the Byrds did not assert that defense and the verdict of the jury is not consistent with its existence. The district judge instructed the jury:

[B]efore you may award punitive damages the plaintiff has the burden to prove by a preponderance of the evidence that the defendants acted, as I stated before, with actual malice, recklessness, or with wanton disregard for the rights of the plaintiff, and oppressively . . . . .

ocratic hearing on legitimate disciplinary charges. . . . Imposition of exemplary damages, when the requisite elements of malice, gross fraud, wanton or wicked conduct, violence or oppression are present, serves to achieve the deterrence they were designed to effect.'

388 F.2d at 200, *quoting Fittipaldi v. Legassie*, 18 A.D.2d 331, 239 N.Y.S.2d 792, 796. The court then stated:

We hold that the district court did not err in instructing the jury that it might award punitive damages. As in all remedial legislation, LMRDA should be liberally construed to effectuate its purposes.

388 F.2d at 200–01 [footnote omitted]. Contrary to defendants' contention, *Fulton Lodge No. 2, International Ass'n of Machinists v. Nix*, 415 F.2d 212 (5th Cir. 1969), did not reject *Braswell*; rather, it relied upon it. *See* 415 F.2d at 220 n. 23, *citing Braswell, supra.*[8] Defendants do not contest the amount of punitive damages. The amount was not unreasonable.

Finally, the defendants challenge the sufficiency of the evidence in the record to support an award of compensatory damages to Keene. The damages issue required that the jury set a figure based upon the differential between union and non-union pay scales, the amount of union scale work that would have been available to Keene during the time of the boycott, and the injury suffered because of the wrongful failure to refer. Keene told the jury that the union boycott forced him to take on non-union work at an hourly wage which averaged about one-half the rate for union work, so that he would have earned about twice as much per hour if he had worked union jobs.

He introduced as evidence his tax returns for the years before and during the boycott period and other information pertaining to the prevailing union wage during the period. The hiring hall lists, which showed the names of persons referred to jobs in preference to Keene, indicated that union work had been available during the boycott period. The defendants countered with allegations that an overall shortage of work existed during the period for which Keene sought compensation. Keene was not required to prove the amount of his damages with mathematical certainty. Defendants did not object to the form of the district court's instructions to the jury on compensatory damages, and the record was adequate for the district court to allow the jury to assess damages. *See Braswell, supra,* 388 F.2d at 199.

■ The jury's award of $25,000 compensatory damages indicated a wholesale adoption of Keene's theory. The district judge ordered a substantial remittitur to $15,000, on the grounds that bias and prejudice curable by remittitur influenced the jury to award an overly generous measure of damages. The figure as reduced is within reason and has support in the record.

We find no reversible error in any of the district court's actions challenged on appeal or cross-appeal. The judgment of the district court is

AFFIRMED.

---

**8.** The district court in *Nix v. Fulton Lodge No. 2, International Ass'n of Machinists,* 262 F.Supp. 1000, 1008 (N.D.Ga.1967), a case prior to *Braswell,* struck plaintiff's claim for punitive damages under Section 411. After this decision but prior to appeal, *Braswell* held that a district court may award punitive damages in a Section 411 suit. On appeal in *Nix,* this circuit held that the district court properly struck the claim for punitive damages and cited *Braswell* as authority. *Fulton Lodge No. 2, International Ass'n of Machinists v. Nix,* 415 F.2d 212, 220 n. 23 (5th Cir. 1969). These holdings are not inconsistent. *Braswell* allows punitive damages where actual malice or reckless or wanton

indifference to the rights of the plaintiff is present. 388 F.2d at 199–200. In *Nix,* the district court found that union officials had acted completely within the scope of their duties in processing complaints brought before them concerning plaintiff's allegedly disruptive activities. No facts in *Nix* suggested any actual malice or reckless or wanton indifference to the rights of the plaintiff on the part of union officials. Therefore, even though the district court in *Nix* could not have known the *Braswell* standard when it ruled, the absence of such action made its ruling acceptable under the *Braswell* standard when it was later adopted.