Mike SEMANCIK and Tony Pappas,
Plaintiffs,

v.

UNITED MINE WORKERS OF AMER-
ICA, DISTRICT #5, Defendant.

Michael ENCRAPERA and Leon
Yablonski, Plaintiffs,

v.

UNITED MINE WORKERS OF AMER-
ICA, DISTRICT #5, Defendant.

Louis ANTAL, Nick DeVince, Joseph Dan-
iels, and Steve Segedi, Plaintiffs,

v.

UNITED MINE WORKERS OF AMER-
ICA, DISTRICT #5, Defendant.

Civ. A. Nos. 71–123, 71–183 and 71–263.

United States District Court,
W. D. Pennsylvania.

April 15, 1971.

Joseph A. Yablonski, Clarice R. Feldman, Richard Sobol, Washington, D. C., Kenneth J. Yablonski, Washington, Pa., for plaintiffs.

Lloyd F. Engle, Pittsburgh, Pa., for defendant.

## FINDINGS AND OPINION

GERALD J. WEBER, District Judge.

These three consolidated cases arise out of a deep division in the ranks of District #5, United Mine Workers of America, which reached a critical point in the December 8, 1970 election of District Officers. The parties to this division are represented by the supporters of Michael Budzanoski, the incumbent

president, and the opposing faction known as the Miners for Democracy who supported rival candidates.

The machinery of the election was the subject of a prior action in this court in which the Miners for Democracy faction contested the manner of adoption of certain amendments to the District 5 Constitution and the consequent use of absentee ballots in the forthcoming election. (Antal et al. v. Budzanoski et al., 320 F.Supp. 161 [1970]). This Court dismissed the prior action for lack of jurisdiction and the matter is now before the Court of Appeals.

Subsequent to December 8, 1970 the outcome of the election was still undetermined and the incumbent officers remained in control. Three sets of disciplinary proceedings were set in motion by the filing of charges before the Executive Board of the District. The Executive Board at the time of the filing of charges consisted of incumbent officers, all of whom were opposed for reelection.

The first set of charges against the plaintiffs Semancik and Pappas were filed by a union member, Joseph Budzanoski, brother of incumbent president Michael Budzanoski. It alleged that during the election campaign the two had subscribed to an affidavit which was printed and circulated by candidates opposing the incumbents, and which recited that one Joe Budzanoski, father of incumbent president Michael Budzanoski and long since deceased, had been a strikebreaker in 1927 and had contributed to the loss of the strike in the coal mines at that time.

These two plaintiffs were served with charges and a notice of hearing to be held on February 8, 1971.

The charges were made under the provisions of the recently adopted Amendment to the District 5 Constitution which provided in its pertinent part:

Article X, Section 10:

"* * * any member or members resorting to dishonest or questionable practices to secure the election or de-feat of any candidate for district office shall be tried by the district executive board and fined, suspended or expelled as the magnitude of the transgression may warrant."

A hearing was held on a motion for preliminary injunction to restrain the executive board from carrying out the disciplinary hearing. The testimony revealed that the results of the December 8, 1970 election had not yet been decided, that ballots had been impounded by the Secretary of Labor, investigations were being conducted, and that the membership of the executive board were incumbent officers whose continuation in office was at stake in the election. The plaintiffs' testimony showed that they were retired members of the UMW now receiving UMW pensions and that they believed that the penalty of dismissal provided for in the disciplinary action could result in the loss of their pensions. Both plaintiffs were supporters of the candidates who opposed the incumbent officers. The testimony revealed a genuine fear of reprisal or retaliatory action by the plaintiffs and other members of the union for their participation in the election against incumbent officers.

The court granted the preliminary injunction restraining the carrying out of disciplinary action against these two plaintiffs until the final disposition of the case.

Following this Order the defendant District 5 UMWA, instituted a second disciplinary proceeding against plaintiffs Yablonski and Encrapera. Again the charges were filed by Joseph Budzanoski, brother of the incumbent president, and were made on the grounds that these plaintiffs had procured the affidavit recited in the first case and had printed and circulated it together with the legend "Joe Budzanoski helped destroy District 5 UMWA in the past" and "Don't let Mike Budzanoski (indicted by Federal Grand Jury) destroy our District in the future." The charges were made under the same provision of the District 5 Constitution as recited above.

A second suit was filed, a hearing held producing similar evidence and a preliminary injunction issued.

A third set of charges was filed against union members under this same constitutional provision. In the third case several members signed the charges, including incumbent president Michael Budzanoski and incumbent secretary-treasurer John Seddon. They then disqualified themselves from sitting on the executive board to hear the charges. The charges were made against Louis Antal, opposition candidate for the office of district president, and Joseph Daniels, opposition candidate for the office of secretary-treasurer, and two others.

The complaint instituting this disciplinary action alleges that these members made false accusations among members of the union and the general public pertaining to alleged tampering with absentee ballots in the district election held December 8, 1970.

A third suit for injunctive and other relief was filed, a hearing held on motion for preliminary injunction to restrain further action on the disciplinary proceedings, and the restraining order was granted.

At the third hearing the court determined that all three cases should be consolidated. The court indicated that the successive attempts of the district executive board to use the disciplinary powers while the results of the December 8, 1970 election were still under contest and still subject to further contest and possible court action by the Secretary of Labor exhibited a studied evasion or disregard of prior orders of the court enjoining such practices. The defendants' answer to this was that the District 5 executive board was without any discretion on the matter of holding the disciplinary hearing whenever charges were filed by any member of the union, under the provisions of the District 5 Constitution.

Our attention was then drawn to the terms of Article X, Section 10 of the District 5 Constitution under which all these charges were brought. Plaintiffs were allowed to amend the complaints in these cases to add the allegation that the provisions of Article X, Section 10 is inconsistent with the guarantees of Title I of the LMRD Act of 1959, particularly Sec. 101(a) (1) which guarantees rights of free participation in union elections, Sec. 101(a) (2) guaranteeing union members the right of freedom of speech on union matters, and Sec. 101(a) (5) guaranteeing a right of administrative due process in internal union disciplinary proceedings. 29 U.S.C.A. 411(a) (1), (2) and (5). Therefore plaintiffs contend that the said constitutional provision is void under Sec. 101(b) of the LMRDA which makes any provision of the constitution and by-laws of any labor organization inconsistent with the provisions of this section of no force and effect.

Sec. 101(a) (5) provides that a member be (a) served with written specific charges, and (c) afforded a full and fair hearing.

The practical effect of the use of this disciplinary procedure is vividly illustrated in this case. It permits incumbent officers, or persons in close relationship to them, to file charges before an executive board, which also consists of incumbent officers, against any union member, including, as in this case, those members opposing the incumbents and their supporters, for any conduct during an election either before that election is held or before it is finally determined. These charges are heard and discipline is imposed by the incumbent executive board whose reelection is the issue out of which the accusation arises. In these cases the prosecutor is also the trier of the facts of guilt. We do not find that the disqualification of the officer bringing the charges from sitting with his fellow incumbent officers on the trial board to be an effective protection under the facts of this case where other members of the trial board are part of his incumbent administration and parties of his faction in the disputed election.

We do not believe that the standards set by the constitutional provision under which charges may be brought; i. e. "resorting to dishonest or questionable practices to secure the election or defeat of any candidate" can withstand any due process test.

It appears clear to the court that the constitutional provision subjecting members to discipline for "dishonest or questionable practices to secure the election or defeat of any candidate" can have no other effect but to suppress the free exercise of criticism and electioneering guaranteed by the LMRD Act.

"The legislative history and the extensive hearings which preceded the enactment of the statute abundantly evidence the intention of the Congress to prevent union officials from using their disciplinary powers to silence criticism and punish those who dare to question and complain." Salzhandler v. Caputo, 316 F.2d 445, 449 [2d Cir. 1963].

In the above cited case the court held that provisions of a union's constitution which prohibited conduct unbecoming to a member, acts detrimental to the interests of the Union, libeling and slandering fellow members or officers of the Local Union and acts and conduct inconsistent with the duties, obligations and fealty of a member, to be unenforceable:

"We hold that the LMRDA protects the union member in the exercise of his right to make such charges without reprisal by the union; that any provisions of the union constitution which make such criticism, whether libelous or not, subject to union discipline are unenforceable; * * * " Idem. p. 446.

In International Brotherhood of Boilermakers, etc. v. Rafferty, 348 F.2d 307 [9th Cir., 1965], the provisions of the union constitution under which disciplinary proceedings were instituted covered creating dissension among the members and working against the interest and harmony of the union; circulating false rumors and making slanderous charges about another union member which they are unable to prove; and disclosure of the private transactions of the Local Union. The District Court found and the Court of Appeals affirmed that by penalizing members for circulating handbills allegedly containing false and untruthful statements the union had unlawfully infringed on plaintiffs' legal rights and violated the provisions of Title I, Sec. 101, of the LMRDA. 29 U.S.C.A. 411 et seq.

Union constitutional provisions providing for disciplinary action for resort to the courts in union controversies were held to be repugnant to the LMRDA, Title I, Sec. 101, and of no effect in Ryan v. International Brotherhood of Electric Wkrs., 241 F.Supp. 489 [N.D.Ill.1965], affd. 361 F.2d 942 [7th Cir., 1966].

In Retail Clerks Union, Local 648 v. Retail Clerks Int. Ass'n, 299 F.Supp. 1012 [D.C.Dist.1969], certain employees of the union were discharged shortly after an election on the grounds that their conduct offended established policy and practice. The court concluded that the basic motivation for the so-called policy and practice was to place control of the Union in the hands of persons amenable to the opinions of incumbent officers and to minimize the possibility of any viable opposition. (p. 1020). The Court held:

"Section 101(a) of the Act guarantees to each member of a labor organization the right of free expression and free participation in the union's democratic processes. To be disciplined for exercising this right offends § 609."

"Union members cannot, under the terms of the Act, be placed in the predicament of choosing between their right of free expression under § 101(a) and their jobs." (pp. 1020, 1021).

■ In the present case the language of the District 5 Constitution fails to describe any ascertainable standard of conduct. Regardless of the specifications of the conduct alleged to violate this language, there is no guide in the language of the constitutional provision by which such conduct may be measured. "It is

the statute, not the accusation under it, that prescribes the rule to govern conduct and warns against transgression." Lanzetta v. New Jersey, 306 U.S. 451, 453, 59 S.Ct. 618, 619, 83 L.Ed. 888 [1939]. "And a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law." Idem. p. 453, 59 S.Ct. p. 619.

■ While it is settled that the penal provisions in union constitutions must be narrowly construed, Allen v. International Alliance of Theatrical, etc. Employees, 338 F.2d 309 [5th Cir., 1964], we can see no possible application of the constitutional provision here against "dishonest or questionable practices to secure the election or defeat of any candidate" that would not offend against the rights guaranteed by Sec. 101(a) (1) and (2) of the Act.

The difficulty arises because the language of the constitutional provision is incapable of exact definition in describing an offense against proper union internal discipline.

We find no ascertainable standard of conduct in describing such conduct as either "dishonest" or "questionable".

We therefore conclude that any disciplinary proceeding brought in District 5 UMWA under the terms of the constitutional prohibition against "dishonest" or "questionable" conduct to procure an election to be violative of the rights granted union members.

■ We find no circumstances in this case that would require plaintiffs to exhaust internal union remedies before commencing suit. Under the circumstances of this case the internal remedies are subject to the control of the very parties against whom this action is brought, the incumbent officers and members of the executive board of District 5, who, together with closely related associations of the same faction, have brought the charges here and intended to sit in judgment on them. The injury to the union members involved and to the free determination of the disputed election was immediate, and is not subject to adequate compensation by monetary damages. Exhaustion of internal remedies is a discretionary requirement, not a mandatory one. Detroy v. American Guild of Variety Artists, 286 F.2d 75 [2nd Cir., 1961]; Harris v. I.L.A. Local 1291, 321 F.2d 801 [3rd Cir., 1965].

An injunction against the application of disciplinary proceedings on a case by case basis has proven ineffective in these cases because of the repeated use of this process by defendant. We have therefore consolidated the cases and we conclude that the use of this constitutional provision must be permanently enjoined.

The Court, therefore, finds that:

1. The Court has jurisdiction of this matter under Sec. 102 of the Labor Management Reporting and Disclosure Act.

2. That a provision in a District Union constitution providing for discipline and punishment for any dishonest or questionable practices to secure the election or defeat of any candidate is inconsistent with the rights of union members to participate in elections under Sec. 101(a) (1), and with the rights of freedom of speech under Sec. 101(a) (2) of the Labor Management Reporting and Disclosure Act of 1959 and is therefore of no force and effect under Sec. 101(b) of said Act.

3. That any disciplinary proceeding brought under said constitutional provision would be inconsistent with said sections of the Act because the constitutional provision provides no ascertainable standard of guilt.

4. That plaintiffs have no adequate remedy except for injunctive relief.

5. That a permanent injunction should issue restraining any union

disciplinary proceedings under the above-recited provisions of Art. X Sec. 10 of the Constitution of District 5, United Mine Workers of America.

### ORDER

This cause having come on for further and final hearing on the matter of injunctive relief, and the issues therein having been tried before the Court without a jury and the evidence of all the parties hereto having been heard, and the Court having duly made findings of fact and conclusions of law,

Now it is this 15th day of April, 1971, ordered, adjudged and decreed as follows:

1. The preliminary injunctions entered in Civil Action No. 71–123 on Tuesday, February 16, 1971, in Civil Action No. 71–183 on Tuesday, March 2, 1971, and in Civil Action No. 71–263 on Wednesday, March 24, 1971, be and the same hereby are made permanent and perpetual against the above-named defendant, and its servants, agents and attorneys.

2. Defendant is further permanently and perpetually enjoined from instituting any disciplinary proceedings against any union member under the following provision of Article X, Section 10 of the Constitution of District 5, United Mine Workers of America:

"* * * (A)ny member or members resorting to dishonest or questionable practices to secure the election or defeat of any candidate for district office shall be tried by the district executive board and fined, suspended or expelled as the magnitude of the transgression may warrant."

3. The Court will set a time and date for a hearing on the question of monetary damages, attorney fees, expenses and costs as matters of the relief prayed for by the plaintiffs to these actions.

Further, I, the District Judge in the above-entitled actions, am of the opinion that this Order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from this Order as authorized by 28 U.S.C. 1292(b) may materially advance the ultimate termination of the litigation.