**Bert CROSS et al., Plaintiffs,**

v.

**UNITED MINE WORKERS OF AMERICA et al., Defendants.**

**Civ. No. 72-2.**

United States District Court, S. D. Illinois, S. D.

Jan. 29, 1973.

Kramer, Dye, Greenwood, Johnson, Rayson & McVeigh, Knoxville, Tenn., Harrison Combs, Washington, D. C., Gary Peplow, Springfield, Ill., for defendants.

Edward Tarabilda, Springfield, Ill., Isaac N. Groner, Charles R. Both, Cole & Groner, Washington, D. C., for plaintiffs.

## OPINION AND ORDER

POOS, District Judge.

This is a class action by certain members of the United Mine Workers of America (hereinafter UMW), brought under the Labor Management Reporting and Disclosure Act of 1959, Section 304, 29 U.S.C.A., Section 464 (hereinafter LMRDA) seeking the dissolution of an alleged trusteeship imposed by the UMW on District 12 of the UMW.

Defendants have moved to dismiss the complaint for many and diverse reasons. Plaintiffs have moved for summary judgment.

### I.

Plaintiffs allege that District 12 is a subordinate labor organization within the meaning of Section 3(i) and 3(j) of LMRDA, 29 U.S.C. § 402(i) and 402(j) and that District 12 has been maintained in trusteeship within the meaning of Section 3(h) of LMRDA, 29 U.S.C. § 402(h) since September 14, 1959, the effective date of LMRDA, and for many years prior to that time. Plaintiffs also allege that the trusteeship over District 12 is not necessary for any allowable purpose under Section 302 of LMRDA, 29 U.S.C. § 462 and must be presumed invalid under Section 304(c) of the Act, 29 U.S.C. § 464(c) since it has been in existence for more than the 18 months. Section 304 of the Act, 29 U.S.C., Section 464 authorizes a member of a labor organization affected by a violation of Title III to sue for such relief as may be appropriate.

■ ■ Defendants contend that the Complaint should be dismissed because the Plaintiffs have not alleged an exhaustion of administrative remedies as provided by the Act. In analyzing Title III of the LMRDA, 29 U.S.C., Sec. 464, the Court finds no requirement that prior to the commencement of a cause of action plaintiff must exhaust the administrative remedies of the Act. The Act establishes alternative avenues of relief to a union member who desires to abolish a Trusteeship, i. e., through the Secretary of Labor who then files suit, 29 U.S.C. § 464, or by filing a private action, 29 U.S.C. § 464. One avenue envisions the commencement of administrative proceedings, while the other does not. Parks v. IBEW, 314 F.2d 886, (CA4, 1963), cert. denied, 372 U.S. 976, 83 S.Ct. 1111, 10 L.Ed.2d 142; Carpenters v. Brown, 343 F.2d 872 (CA10, 1965); Hotel and Restaurant Employees v. Del Valle, 328 F.2d 885 (CA1, 1964), cert. denied, 379 U.S. 879, 85 S.Ct. 146, 13 L.Ed.2d 86; Schonfeld v. Raftery, 381 F.2d 446 (CA2, 1967). Defendants also allege that since Plaintiffs have not exhausted intra-union remedies, the complaint must be dismissed. Clearly this is not a ground for dismissal for two reasons: (1) exhaustion of intra-union remedies is not a prerequisite to initiation of a private suit to abolish a union trusteeship under 29 U.S.C. § 464; and (2) there is no adequate intra-union remedy in this case. See Lavender v. UMWA, 285 F.Supp. 869, 873 (D.C.), wherein the Court stated:

"The obscurity surrounding the imposition of the trusteeship and the remoteness of the date of its creation produce uncertainties with respect to the efficacy of the internal union remedies."

Defendants' argument that the Complaint should be dismissed because plaintiffs have not alleged that the autonomy of District 12 has been suspended is without merit and is rejected.

Likewise, defendants' argument that this cause of action should be dismissed because this is not a proper class action under 29 U.S.C., Sec. 464, and because the requirements of Rule 23 and 23.2 of the Federal Rules of Civil Procedure have not been complied with is also not considered meritorious. Accordingly, defendants' Motion to Dismiss this cause of action must be denied.

## II.

The question now arises as to whether or not the plaintiffs are entitled to summary judgment. Rule 56 of The Federal Rules of Civil Procedure provides in pertinent part as follows:

" . . . The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

In reviewing the pleadings and deposition on file, in addition to the affidavits, the Court finds no genuine issue as to any material fact, and that this cause of action is in the proper posture for disposition by summary judgment.

The following facts have been elicited from the files before the Court:

All plaintiffs are members in good standing of the UMWA and its locals within the jurisdiction of District 12. All plaintiffs are working coal miners employed by signatories to collective bargaining agreements with the UMWA and District 12.

District 12 was placed in "provisional" or "semi-autonomous" status on February 27, 1933. The International Union is located in Washington, D. C., and District 12 is located in Springfield, Illinois. Kenneth Wells has been appointed President and Secretary-Treasurer of District 12 since the President and Secretary-Treasurer of District 12 are not elected by the Union membership in the District.

The coal mines at which members of District 12 are employed, ship coal in interstate and foreign commerce.

District 12 has entered into collective bargaining agreements with the Illinois Coal Operators Association and such contracts remain in effect to the extent not modified by subsequent agreements. District 12 has been certified by the NLRB as the collective bargaining agent for employees in an industry affecting commerce. District 12's officers and representatives participate in the "settlement of local and District disputes" under the collective bargaining agreement and otherwise deal with employers concerning wages, hours and conditions of employment.

Given these undisputed facts, there are two legal questions before the Court:

(1) Whether District 12 is a "labor organization within the meaning of 29 U.S.C., Sec. 402(i); and

(2) Whether District 12 is and has been maintained in a "Trusteeship" within the meaning of 29 U.S.C., Section 402(h).

The definition of labor organization is set out in Title 29, U.S.C., Section 402(i) as follows:

"A labor organization engaged in an industry affecting commerce and includes any organization of any kind, any agency, or employee representation, committee, group, association, or plan so engaged in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours, or other terms, or conditions of employment, and any conference, general committee, joint or system board, or joint council so engaged

which is subordinate to a national or international labor organization, other than a State or local central body."

 The evidence before this Court clearly establishes the labor organization status of District 12. Namely, that District 12 has entered into collective bargaining agreements with employers governing wages, rates of pay, hours and grievances. The officers and representatives of District 12 resolve or attempt to resolve labor disputes which fall outside the grievance procedure. Further, District 12 and its officers have other contract responsibilities in representing employees concerning wages, hours and working conditions. District 12 has applied for, and has been granted, a tax exempt status as a "labor organization", Section 501(c)(5), Internal Revenue Code of 1954.

The Seventh Circuit Court of Appeals has granted enforcement to an order of the National Labor Relations Board entered under Section 8(b) of the National Labor Relations Act, 29 U.S.C., Section 158(b), (which applies only to "labor organizations"), directing District 12 to cease and desist from unfair labor practices, NLRB v. District 12, UMW 76 LRRM 2828 (CA7, 1971), enforcing 177 NLRB No. 27. In addition, the affidavits filed herein conclusively show that coal mined by signatories to the Wage Agreement is shipped in interstate commerce.

The argument of the UMW is that District 12 is merely an administrative arm of the international union. Even if District 12 is an administrative arm of the international union, it does not make it any less of a labor organization. Title 29 U.S.C., Section 402(i) points out that a district may be a labor organization regardless of whether it is engaged in the specified activities solely by itself or as a "subordinate to a national or international labor organization." In this regard it is significant that the courts have repeatedly held that other UMW Districts, similarly situated, are "labor organizations". Monborne, et al v. UMWA (Civil Action No. 71-690, W.D. Pa., 1972); Jones & Laughlin Steel Corporation v. UMWA (Civil Action No. 71-566, W.D.Pa.); Hodgson v. District 6, UMWA (S.D.Ohio, Civil Action No. 69-100, 1971); Semancik v. UMWA, 324 F.Supp. 1292 (W.D.Pa.1971). Accordingly, this Court finds as a matter of law, that District 12 of the UMW is a labor organization engaged in commerce within the meaning of Title 29 U.S.C., Sec. 402(i).

The issue now arises as to whether or not District 12 is and has been maintained in a "Trusteeship" within the meaning of 29 U.S.C., Section 402(h). "Trusteeship" is defined as:

" . . . any receivership, trusteeship, or other method of supervision or control whereby a labor organization suspends the autonomy otherwise available to a subordinate body under its constitution or bylaws."

The Initial Trusteeship Report filed by District 12 and the International Union under protest in 1959 is evidence of the fact that District 12 has been a "semi-autonomous" or "provisional" District since 1933, and that UMW members within the District did not have the right to elect their officers. The affidavits, in addition to Exhibit A to the Complaint filed herein, establish that the members who pay dues to District 12 do not elect the District President and Secretary-Treasurer.

The Department of Labor, the agency charged with administering and enforcing LMRDA, has stated:

"After a district has been established under the UMW Constitution, it is entitled to exercise all the autonomy granted to districts by that document . . . The actions of the UMW in maintaining these districts in provisional status constituted a suspension of autonomy and a trusteeship within the meaning and intent of Section 3(h) of the Act."

" . . . all . . . UMW provisional and semi-autonomous districts,

are considered as being under trusteeship and subject to the provisions of Title III of the Act."

(See Exhibit 3.)

 The Department of Labor's interpretation is entitled to great weight. Griggs v. Duke Power Co., 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971); United States v. City of Chicago, 400 U.S. 8, 91 S.Ct. 18, 27 L.Ed.2d 9 (1970); Udall v. Tallman, 380 U.S. 1, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965). The legislative history of LMRDA requires a broad definition of trusteeship. In light of the foregoing, the Court finds as a matter of law that District 12 exists in the form of a trusteeship within the meaning of 29 U.S.C., Section 402(h). This Court finds that the trusteeship over District 12 is not necessary for any allowable purpose under Section 302 of LMRDA, 29 U.S.C. § 462, and must be presumed invalid under Section 304(c) of the Act, 29 U.S.C. § 464(c) since it has been in existence for more than 18 months.

Accordingly, Plaintiffs' Motion for Summary Judgment is hereby granted. The Court further orders that:

(1) The Defendant International Union and officers of District 12 be enjoined from continuing the Trusteeship of District 12;

(2) The American Arbitration Association conduct secret ballot nominations and an election within four months from the date of this order for the offices of District President and District Secretary-Treasurer;

(3) The American Arbitration Association have control over the entire election process, including the creation of election rules governing nominations, eligibility of candidates, resolution of contested nominations and elections, campaigning, fair election procedures, balloting and counting of the ballots, consistent with the provisions of LMRDA.

(4) The American Arbitration Association certify to this Court the results of this election within five months following the entry of this Order;

(5) The Defendant International Union pay the entire expense incurred by the American Arbitration Association in conducting and supervising the nomination, election and certification of nominated candidates;

(6) The funds of District 12 and the Defendant International Union not be used directly or indirectly, to support the candidacy of any person;

(7) Counsel for Plaintiffs be granted reasonable attorneys' fees and costs of prosecution of this action.