696 F.2d 1300
 112 L.R.R.M. (BNA) 2668, 96 Lab.Cas. P 14,000
 LOCAL 317, NATIONAL POST OFFICE MAIL HANDLERS, WATCHMEN,
MESSENGERS AND GROUP LEADERS DIVISION OF the
LABORERS' ETC., et al.,
Plaintiffs-Appellees, Cross-Appellants,
v.
NATIONAL POST OFFICE MAIL HANDLERS, ETC., et al.,
Defendants-Appellants, Cross-Appellees.
 No. 80-7971.
 United States Court of Appeals,
Eleventh Circuit.
 Jan. 31, 1983.
 
 John C. Falkenberry, Stewart, Falkenberry & Whatley, Birmingham, Ala., for defendants-appellants, cross-appellees.
 C. Knox McLaney, III, Montgomery, Ala., for plaintiffs-appellees, cross-appellants.
 Appeals from the United States District Court for the Middle District of Alabama.
 Before RONEY and KRAVITCH, Circuit Judges, and PITTMAN*, District Judge.
 RONEY, Circuit Judge:
 
 
 1
 In a controversy between unions, this case raises the question of whether the National Director of a union had authority to divide one local union into four separate unions serving the same geographical territory formerly served by the one local. The district court held the action was not authorized by the union's constitution and enjoined the defendants, the National Union and its National Director, from further recognition of the separate locals. The processing of this appeal was held pending the Supreme Court determination that a federal court has jurisdiction to consider allegations of violations of union constitutions under 39 U.S.C.A. Sec. 1208, even though those violations had no impact on external labor-employer relations. The Supreme Court has made clear that a suit brought by a local union against its parent international union, alleging violation of the International's constitution, falls within Sec. 301(a) jurisdiction of a federal district court. United Association of Journeymen & Apprentices of the Plumbing & Pipefitting Industry v. Local 334, 452 U.S. 615, 101 S.Ct. 2546, 69 L.Ed.2d 280 (1981). With the jurisdictional issue out of the way, we affirm the decision of the district court that there was a violation of the union constitution in this case.
 
 
 2
 Local 317 of the National Post Office Mail Handlers, Messengers and Group Leaders Division of the Laborers' International Union of North America, AFL-CIO (Local 317), was created in 1974 through the amalgamation of several local unions. Prior to the action of the National Director that led to this lawsuit, Local 317 represented mail handlers employed by the United States Postal Service in a five-state area that included Alabama, Arkansas, Tennessee, Oklahoma, and Mississippi.
 
 
 3
 The National Director informed the officers of Local 317 that he had received a "number of letters and inquiries concerning the representation and service of Local 317." At a meeting called to discuss "realigning and structuring" the local union, members and officers of Local 317 were given the opportunity to express their opinions of the complaints about the local union's operation and the proposed reorganization. The National Director restructured Local 317 into four separate geographical unions after obtaining approval from the General President of the Laborers' International Union of North America (LIUNA), of which the National is a division, as required by the National Constitution.
 
 
 4
 Following written notice of the restructuring, Local 317 filed suit against the National, seeking a preliminary and permanent injunction against implementation of the plan. The complaint was dismissed for failure to exhaust available internal remedies. Plaintiff then appealed the National Director's decision to the Policy and Steering Committee of the National. The committee upheld the action of the National Director. In a written decision the committee construed the National and Local Constitutions to require only that the National Director's decision to reorganize any local union be "necessary or advisable" and found his decision had a rational basis in the evidence available to him.
 
 
 5
 Local 317 filed a second complaint seeking injunctive relief in the Middle District of Alabama. The district court concluded the National Constitution's prohibition against the issuance of a local charter where there is already in existence another local barred the reorganization. The court also found significant the lack of constitutional authority to divide a local in light of an express grant of authority to "merge or amalgamate existing local unions." This appeal by the National and the National Director followed. On cross-appeal Local 317 seeks attorney's fees and damages for breach of contract.
 
 
 6
 A court is bound to accept the interpretation placed on the Constitution by the National if it is fair and reasonable. Pignotti v. Local No. 3, 477 F.2d 825, 831 (8th Cir.), cert. denied, 414 U.S. 1067, 94 S.Ct. 576, 38 L.Ed.2d 472 (1973); Sabolsky v. Budzanoski, 457 F.2d 1245, 1252 (3d Cir.), cert. denied, 409 U.S. 853, 93 S.Ct. 65, 34 L.Ed.2d 96 (1972); Vestal v. Hoffa, 451 F.2d 706, 709 (6th Cir.1971), cert. denied, 406 U.S. 934, 92 S.Ct. 1768, 32 L.Ed.2d 135 (1972); English v. Cunningham, 282 F.2d 848, 850 (D.C.Cir.1960). We believe the construction rule as to statutory acts in the cases cited immediately hereafter should be applied to the labor union's Constitution, therefore, the plain language of the Constitution must be followed by both the union and the court. Addison v. Holly Hill Fruit Products, Inc., 322 U.S. 607, 617-18, 64 S.Ct. 1215, 1221, 88 L.Ed. 1488 (1944); Caminetti v. United States, 242 U.S. 470, 485, 37 S.Ct. 192, 194, 61 L.Ed. 442 (1917). In Allen v. International Alliance of Theatrical, Stage Employees, 338 F.2d 309 (5th Cir.1964), this Court indicated that "[a] provision that a specified officer shall have power to interpret the constitution cannot overcome the plain meaning of the language ...." Id. at 316. Both parties argue this case on the premise that the National Director has no authority outside of that provided by the union constitutions.
 
 
 7
 The focus of a case such as this, therefore, is on the fairness and reasonableness of National's interpretation. This turns on whether it is a fair interpretation of the words and provisions of the Constitution, not whether it would be fair and reasonable for the Constitution to provide the authority sought by the National. That distinction is important here because no argument could be made that a provision authorizing the action here taken would be unsound or legally prohibited. According to an affidavit in the record, the National and Local Constitutions have been amended to authorize the National Director to "deamalgamate and otherwise alter existing local unions." Because the amendments occurred after the actions complained of here and after the decision of the district court, they are not before us on this appeal. We must decide the case on the record and thus on the Constitutions as they existed when Local 317 was decided.
 
 
 8
 Both the National and Local Constitutions are here involved. Article VIII, Section 1 of the National Constitution provides:
 
 
 9
 This organization shall consist of Local Unions and other subordinate bodies. The National Director, subject to the approval of the General President of LIUNA, shall have the authority to issue Local Union charters on such terms and conditions as he shall deem appropriate. No such charter shall be issued where there is in existence a Local Union having jurisdiction over the Postal Service facility in which Mail Handlers are employed. The National Director, subject to the approval of the General President of LIUNA, shall have the authority to merge or amalgamate existing Local Unions where he deems such action necessary or advisable. (Emphasis added.)
 
 
 10
 The National has interpreted the sentence that reads, "No such charter shall be issued where there is in existence a Local Union having jurisdiction over the Postal Service facility ...," merely as a limitation on "dual unions" or "overlapping jurisdiction." Overlapping jurisdiction, as its name implies, describes the situation that exists when two local unions concurrently exercise jurisdiction over the same territory, including the same postal facilities. Before the National became affiliated with LIUNA, overlapping jurisdiction was common. Because disputes and conflicts inevitably arose, the drafters of the National Constitution included the provision in question. The National points out that the provision has never been interpreted as an impediment to the amalgamation of small local unions into larger local unions. Even though charters were issued to a larger local union where an existing local had exercised jurisdiction over a postal facility, the National argues that the provision was not considered a bar because no two local unions had jurisdiction over the same postal facility at the same time.
 
 
 11
 This argument overlooks the last sentence of Article VIII, Section 1. That provision authorizes the National Director to merge or amalgamate existing local unions as he deems necessary or advisable and immediately follows the provision curtailing overlapping jurisdiction. Because the Constitution makes no provision for the splitting of locals, we can assume the power to do so was not intended to be conferred on the National Director. We agree with the district court that neither "merge" nor "amalgamate" encompasses the reorganization of Local 317 into four local unions. The plain meaning of both words relate to combining smaller units into a larger one, not vice versa. Therefore, the National Constitution does not authorize the actions taken by the National and the National Director.
 
 
 12
 The National falls back on the language of the Uniform Local Constitution as authority for its action. Article I, Section 4 of the Uniform Local Constitution provides:
 
 
 13
 The territorial jurisdiction of this Local Union shall be that assigned by the National Director, subject to the approval of the General President of LIUNA; and the National Director shall, in accordance with the Constitution of the Mail Handlers Division, have authority to merge, modify, or amalgamate existing Local Unions where he deems such action necessary or advisable. (Emphasis added.)
 
 
 14
 The National contends that the inclusion of the word "modify" in the above provision authorizes the action taken, even if the words "merge" and "amalgamate" do not.
 
 
 15
 We agree with the district court that, even if the division of Local 317 into four local unions could be characterized as the modification of a local union, the National again overlooks other language contained in the very provision on which it relies. Specifically, the National's argument ignores the phrase "in accordance with the Constitution of the Mail Handlers Division." This phrase refers to those powers granted the National Director in the National Constitution. Reading the two Constitutions together, as the National urges, the Uniform Local Constitution does not enlarge the authority of the National Director beyond that given in the National Constitution. Therefore, we conclude the National Director was without authority to restructure Local 317 as he did.
 
 Cross-Appeal
 
 16
 Local 317 contends the district court improperly denied its request for attorney's fees. The traditional American rule is that, absent statutory or contractual authorization, litigants pay their own attorney's fees. Alyeska Pipeline Service Co. v. Wilderness Society, 421 U.S. 240, 257, 95 S.Ct. 1612, 1621, 44 L.Ed.2d 141 (1975); Hall v. Cole, 412 U.S. 1, 4, 93 S.Ct. 1943, 1945, 36 L.Ed.2d 702 (1973). An exception may be made where the losing party has demonstrated bad faith or where the award spreads the cost among a class benefited by the prevailing party's successful litigation. Alyeska Pipeline Service Co. v. Wilderness Society, 421 U.S. at 257-59, 95 S.Ct. at 1621-1622; Hall v. Cole, 412 U.S. at 5-6, 93 S.Ct. at 1946. The district court noted that defendants believed their actions were proper and declined to award attorney's fees to plaintiffs. The finding of a lack of bad faith is supported by the record. On appeal Local 317 contends the litigation has resulted in a common benefit to union members by enforcing the Constitution. We do not perceive this to be a benefit substantial enough to warrant fee shifting, particularly in light of the district court's finding that the division of Local 317 resulted in increased local interest and membership. Therefore, plaintiffs are not entitled to attorney's fees.
 
 
 17
 The second issue on cross-appeal is what relief should have been granted. After ruling that the division of Local 317 into small local unions was in violation of the National and Local Constitutions, the district court requested the parties' suggestions as to a reasonable remedy. Although the record does not reveal what remedies were suggested, the district court determined no satisfactory suggestion had been made. The court restored the parties to their original positions, directing that Local 317 be restored as the local union in the five-state area and that the then-present union officials of Local 317 should remain in office until elections were held within three months. Local 317 reasons that an award of damages was appropriate because the National's action in violation of the Constitution amounted to a breach of contract. See Local 334, 452 U.S. at 619-22, 101 S.Ct. at 2548-2550 (constitution of a labor union may be characterized as a contract). Contrary to Local 317's contention that the district court erred in failing to hold a hearing to determine the amount of damages, we detect no reversible error.
 
 
 18
 AFFIRMED.
 
 
 
 *
 Honorable Virgil Pittman, U.S. District Judge for the Southern District of Alabama, sitting by designation